We'll move to the third argument of this morning, appeal number 21-12-20, United States v. David Walsh. Mr. May, good morning to you. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Counsel. My name is Colleen Remy and I'm with the Federal Defender's Office and I represent defendant David Walsh in this case. On October 6th of 2020, David Walsh, then a 73-year-old man who had spent the vast majority of his adult life behind bars, began his sentencing in this case via video proceeding. Ms. Remy, can I ask you a question? Yes, Your Honor. It's nice to see you. Nice to see you. You're here almost as much as I am. It feels that way, doesn't it, Your Honor? I have a question for you regarding the alleged unreasonableness of Mr. Walsh's sentence. When Judge Feinerman was going to pronounce the sentence, he was going to give him something less and then Mr. Walsh exploded and he ultimately increased the sentence based upon what Mr. Walsh said. Would it be your position or is it your position that had Mr. Walsh received a life sentence irregardless of what he said that would be unreasonable? Your Honor, I believe it would be unreasonable regardless, but the circumstances and the explanation in this case show that they only bolster the argument that it was unreasonable. And that is because the main thrust of Judge Feinerman's explanation for the life sentence that he received in this case was that he was ... basically that we needed to protect the public from Mr. Walsh. What role, if any, does your client's age play in this? He received ... Judge Feinerman said he was effectively ... I mean, I think he was effectively giving him nearly a life sentence anyway. Right? And then he just increased it to life based upon what he said. If your client was 20, would the argument be a little bit different than the fact that he's 74 or would it not? You know, I think given that every defendant in every situation is a little bit different, this is a totality of the circumstances evaluation. So certainly if he had gone from a 13-year sentence at age 20 to a life sentence at age 20, the actual years in prison and the difference of that would be different, right? It would be much greater as opposed to starting at ... He was about 70, I think, or 71 when he committed the offense. And so certainly the difference between 13 years and a life sentence as a number of years is potentially zero. One of the reasons for Mr. Walsh's tirade and his vitriol, he walked in asking for five years. The government walked in asking for 11 and a half years. When the court ruled that he really needed 13 years to Mr. Walsh, it actually felt like a life sentence. Now there is a difference between a term of years and a term that arguably there is some hope that he would survive and be able to live a free man at some point in the future versus a life, just a sentence of life behind bars. There's a difference in the way that individuals experience that time of incarceration and the level of hope that they feel, all of those things. So certainly in terms of numerical years, the difference may or may not be that great. Mr. Walsh, as I said, is older. He is not in stellar health, so he may not have survived the originally announced 13 year sentence. But what I'd like to come back to is the fact that when the judge announced 13 years, he said that, look, this, I believe that Mr. Walsh is a danger to the public. I think that he's just incorrigible. He's just, he's never going to change. And so I'm fashioning this sentence to protect the public because by the time he's into his threat to the public, he'll be incapacitated. Nothing really about what Mr. Walsh said then following that, that determination changed that factor. He would still be in his 80s when he was released. He would be no more capable of harming anyone at that time than he was before he lost his cool. And that is obviously a euphemism. Mr. Walsh was, given what he felt like was obviously, I mean, he was devastated by the announcement of the sentence. And he, I mean, his tirade was admittedly one of the worst tirades that we've seen, I've ever seen personally in open court. Now, this sort of brings us to the second point. And even in your, I mean, I think that, I trust that's a fair statement, but you seen anything worse in preparing for the argument today? I did not, Your Honor. I was, it's sort of a hard thing to search in the case law. No, I know. I know. But counsel, do we even get to substantive reasonableness or are we obligated under our case law to address the recusal question first as a procedural issue? Well, I believe that they sort of go hand in hand. And I vacillated for a while about which one to put first in the argument. But exactly, it's difficult to judge them independently of one another because the vitriol and the personal attacks that were made against Judge Feinerman are statements that any thinking breathing, caring individual would have an incredibly difficult time not having an emotional reaction to. And the court did make a finding afterwards that when, upon the motion to recuse, that this was strategically motivated, that he was trying to get a better judge. Now, there is some question about that because in my reading of the transcript and looking at this, I believe Mr. Walsh thought he was sentenced. The question about whether, I mean, we're not arguing that he was sentenced at that time because legally there isn't really support for that. But the difference between announcing a sentence and pronouncing the sentence and imposing it is a technical, legal situation that Mr. Walsh, as a layperson, would not have known the difference. And he heard, this is my sentence, and he reacted. Now, it's hard for me to come up with a tactical or logistical reason that Mr. Walsh would want to, would think that by threatening the judge, he could get a different sentence. I think that he did say, I want to see this on, I want to see the transcript and all of that. He was certainly planning to appeal because he felt that the 156 months was unreasonable. The judge then, but by finding, going back to the judge finding that it was strategically motivated, while certainly the case law does suggest that any time a threat is made against the judge, one of the factors to consider in recusal is whether or not it's strategically motivated. We argue that that should not be the only factor that controls. And certainly, when you look at the situation in this case, that conclusion is far from unassailable. There may be, there certainly were arguments that Judge Feinerman found persuasive that it was strategically motivated, or actually Judge Feinerman, I believe, made the arguments that it was strategically motivated. But there are also good arguments for the fact that when you look at the level of, Mr. Walsh threatened not only to kill the judge, but to rape and murder his wife. And the extent and the just personal attack here, I believe that we should look at whether or not it's reasonable to expect anyone to be able to separate themselves from that kind of personal assault. Counsel, 455 has two prongs. Yes. And I understand you just now have discussed the second one. Can you address the first one, which is about the appearance of bias? Sure, yes, Your Honor. So the appearance of bias, we're looking at any, so the standard is any reasonable, objective observer would harbor significant doubts as to the judge's ability to be impartial. In this case, we have the actual, the vitriol and the just sort of common human response to that kind of level of threat being leveled against someone. So that certainly takes it out of there. But we also look at, I mean, that's, my understanding of the case law is that's in subsection A is where we find this idea of whether or not the threat was strategically motivated. And the other courts and other circuit courts have found that not only this idea of whether it was like a ploy to manipulate the judicial system should be considered, but we should consider the defendant's demeanor and the context of the threat. We should consider his capacity to carry out the threat. And whether or not the threat resulted in any conduct by the district court that could be interpreted as prejudicial to the defendant. Now here, increasing a sentence from five years or the total sentence of 156 months or 13 years to life would certainly be seen by an outside observer as prejudicial. It's hard to argue that that did not prejudice Mr. Walsh. Any increase would prejudice him. Sure. This is extremely slippery slope you're asking us to go down. You know that, right? I mean, you're asking us to grade these comments and maybe if he hadn't said as much or as long or said as nasty of things that he did to the judge, he wouldn't necessarily need another judge. This puts us, I don't know how district judges, I mean, if a defendant says, if a civil defendant says to the judge, I don't like you, is that enough? I mean, clearly it's not. But where do we go? What do we instruct district judges here? Well, I think that's why, I mean, we have plenty of situations in the law where we look at the totality of the circumstances and that's really what we're looking for here. I think that to go the other way and say that anytime a judge finds that there is some and not, it's not pure motivation, it's just some motivation to  and the judge wouldn't be, you know, despite any appearance of impropriety, appearance of bias, that we should allow the judge to do something as significant as sentencing a criminal defendant as imposing sentence and particularly in a case like this, you know, the difference between ever having any chance of seeing another day as a free and an individual. Sure, may I, I'll give, we'll give you the time on rebuttal given the gravity of this, but I got a question I'd like to get the benefit of your reaction to. One of the things that, I read all the transcripts, every word of them, and one of the things that stuck out to me was I thought somewhere, for a lot of the reasons that you're articulating this morning, you would see some indication, even between the lines perhaps, from the district court of an emotional response to this because of just the kind of human impact of hearing, you know, somebody threaten your life and your family's life. But I must say, I don't see any indication of that. I'm, to the contrary, blown away by the care, the diligence, the measure, the balance that's reflected in the totality of these transcripts, including when the tirade was happening. And doesn't that mean something in the, in the recusal analysis? Your Honor, I, I would certainly agree with you that Judge Feinerman's cool and calm is, was exemplary in this case. Certainly, you know, that is one factor to look at, but that's, I think, where I kind of switch back into the substantive unreasonableness portion because as calm and cool and collected as Judge Feinerman was, and, you know, he had had, Mr. Walsh wasn't sentenced until January 20th of the following year. So this is months later he's able to, you know, to articulate all of these, these ideas. I don't, I don't believe that Judge Feinerman believes he was biased. But, and, but I believe that when something like this happens and then you see the difference in the imposition of sentence from 13 years to life and a justification that, that hinges on protection of the public, which had already thoroughly been considered in the decision to impose 13 years, it just cannot bear. Yeah, protection, but also in fairness, there's, there's, um, he did emphasize the aspects of Mr. Walsh's statements that show, um, complete disdain for the law, not just a lack of respect. He did. Yeah. And okay. How about we'll give you, we'll give you your full rebuttal time. Okay. Sure. Good morning. Mr. Koukouras. Good morning. May it please the court. The district court in this case properly denied the motion to recuse after the court found that at least one reason the defendant made his threats was to force recusal. And that finding by the district court was not clear error. Case law makes clear that so long as one reason for the threats was a defendant's intent to force recusal, recusal was not required. And in fact, the 10th circuit has said that there is a presumption that threats communicated directly to a judge are intended to force recusal. The court's conclusions about the defendant's intent are well supported by the observations of the defendant's demeanor during the threats, the defendant's history of acting strategically during the proceedings in order to create what the district court called a more favorable decisional environment for the defendant. And the court's finding that the most plausible explanation for the great detail that the defendant offered in the course of his threats was in fact to trigger the assignment of a new judge. The sentence that the court imposed does not display any improper bias or otherwise support recusal. The sentence was well supported by the record in the case, and that included not only the defendant's lengthy criminal history and the severity of his crimes in this case, but the defendant's insistence at sentence, his assurances to the law, and that if he ever has the opportunity outside of prison to kill people, that he will take that opportunity. Your Honor, with regard to recusal, the court's conclusion is entirely consistent with this court's order in Crawford and with the case law that preceded that, including the 10th circuit's opinion in United States versus Greenspan, where the law says that as long as one reason for making the threats is to force recusal, then recusal is not required. The position that the defendant urges would require this court to do a balancing and conclude that if the threats were at some sufficient level of seriousness, then that motive no longer matters. And that's not how the courts have approached this in the past. Section 455A views this from the perspective of a reasonable person who's fully informed about the basis for seeking recusal, and someone who's fully informed would know the fact that the judge found, and that is that recusal was one of the reasons the defendant made his threats. Turning to the sentence itself, the sentence was well supported by the record here, and that includes the defendant's lengthy criminal history with very little time passing between the commission of one crime to another. And that criminal history includes the murder of a police officer, armed robbery, possession of dangerous weapons, combined with the fact that the defendant possessed a loaded gun when he robbed a bank, in this case, a fact that the district court found to be very meaningful. In fact, the district court found that someone who's robbing a bank with a loaded gun, with a history like the defendant's, suggests that the defendant was ready, willing, and able to shoot someone. Once the defendant made his threats to the district court, and repeatedly assured the court that he will never follow the law, and that he will kill people if he ever gets the opportunity, the district court appropriately considered those comments in fashioning a sentence. In fact, it would have been irresponsible for the district court not to fully consider those comments. Counsel, what do you make of the fact that after Mr. Walsh's rant, the government also had to come back to the courtroom, and the government sent a different prosecutor, it appears, a supervisor in to take over. And the government then asked for 175 months instead of the original 156 that the district court was going to impose, and not life in prison. The government's recommendation of 175 months was based on a guidelines calculation, and that is adding two points which are the equivalent of the obstruction of justice enhancement that didn't strictly apply here. We contend that 175 months would have been an appropriate sentence, but a life sentence was not an abuse of discretion for the court to impose. In fact, the 175 month sentence would have been a de facto life sentence under the law given Mr. Walsh's age, and the district court was explicit in rejecting the idea of giving a certain number of months that would likely result in Mr. Walsh, the defendant, spending the rest of his life in jail, because the district court concluded that didn't convey the district court's findings that Mr. Walsh, given any opportunity, would continue to commit violent gun crimes. The changing out of the assistant U.S. attorney is a very different analysis than changing the judge. There... Yeah, I wasn't asking about that.  Just the recommendation. Certainly. Thank you, Your Honor. And... So, Mr. Koukouros, it seems like one of the points that's inherent in the position you're advancing is that we went from a sentence that was functional or maybe tantamount to the district court imposed here to ensure a natural life sentence. So is it fair to read into that, that who knows how the case would come out, it'd be a different case, and that's the point if the defendant was 50? Yes, it is fair to read into that. With the 156 month sentence that the court originally intended to impose, the court had clearly calculated that that would create the potential for the defendant to get out of prison and, as the court described, hopefully live a law-abiding life. Through his comments, the defendant made clear that that was not going to be a possibility, that he was not going to follow the law if he were given that opportunity. In addition, Your Honor, the fact of the defendant's age suggests that, unlike many defendants, he's not aging out of crime. He's continuing to commit crimes at an advanced age, and he has built up the criminal history that gave the court the confidence that the defendant's assurances were, in fact, true when he sought to assure the judge that he never has and never will respect the law. That was entirely consistent with his own criminal history. Can I take you back to the recusal issue, because we have said in Nettles, we've noted what other circuits have done and said that, you know, a threat that appears to be genuine and not just motivated by a desire to recuse the judge requires recusal. And so here you have argued that this threat was motivated by a desire to recuse Judge Feinerman, but also you've noted that Judge Feinerman found the threats to be genuine. So under Nettles, doesn't this stand for the proposition that a judge should recuse himself if the threat is genuine, even if it is also motivated by a desire for recusal? And as a corollary to that, how do we respond to our clear direction that if this is a close case, a judge should move in the direction of recusal? To take the part about Nettles first, the court did not set a bright line rule in Nettles that indicated that if the threats were genuine, then recusal was warranted. And this court made that clear in its subsequent order in Crawford, where it found that the defendant was motivated to create recusal. The court's observations in Nettles were described the facts of Nettles in which the threat to judges generally in that case, it was a threat to the courthouse. I guess I'm asking you to concentrate here on Judge Feinerman's additional finding that the threats were genuine and not just talk about his finding that they were motivated for a job shopping reason, but he also found them genuine. Can you address that? Yes, the fact that they're genuine does not necessarily require recusal. And all the courts to have considered genuine threats with regard to recusal have stated that even if the threats are serious, in other words, even if they are genuine, recusal is not necessarily required when one motive of the defendant in making those threats is recusal. And in fact, that's true in the Greenspan case from the 10th Circuit, where the court stated that if a judge concludes that recusal is at least one of the defendant's objectives, whether or not the threat is taken seriously, then Section 455 will not require recusal. And that was the case here. The threats were very serious and Judge Feinerman found that they were genuine. But nevertheless, he found that there was an additional motive, and that was to require recusal. So is it your position that really our law is that as long as you find that's one factor, we then ignore all of the other factors? Our court has mentioned, other courts have mentioned, the balancing, the totality of the circumstances, the appearance of bias, all that goes out the window. It doesn't necessarily go out the window. But so long as one of the motives is recusal, then under the law, recusal is not required under Section 455A. But you realize we are looking at this de novo. Correct. Correct. But again, if that motive exists, then recusal is not required. Courts have said, and the 9th Circuit specifically has said, that the district court may recuse itself if it takes the threat seriously. Certainly district courts should have that option as a safety issue, but that they are not required. And that's the situation here. One of the motives was recusal, as the court found, and that finding was not clear error. And once the court found that, it was appropriate for the court to deny the motion. Mr. Kouros, this is a, it's kind of an off-topic question. It doesn't go to the heart of the issue before us, but I'm curious. Does the record provide any context beyond what's in the briefs for the statement that Mr. Walsh was found to have made to Judge Feinerman at the conclusion of a status conference or something? You know what I'm talking about? Yes. Where there's a, and I'll let Ms. Roumet address that too, where there's some kind of comment made to the bench that I murdered a cop? There's nothing in the record with regard to that comment. And was there any record made of that before we got into this whole entire, you know, sentencing set of issues? There was not. It's something that Judge Feinerman put on the record in explaining that through the course of these events, and there were other examples, the defendant tried to create a more favorable decisional environment for himself. And the judge observed that after a proceeding had concluded, as the defendant was gathering his materials in court, he made the comment to the deputy marshals in the courtroom to the effect that he murdered a police officer. Judge Feinerman described later that he knows to a moral certainty that that occurred, but did not expect that it would have been picked up in a transcript because the hearing itself had concluded. And at the time, it didn't have a significant impact on the court, but he, in looking at hindsight, realized that that perhaps was intended to intimidate him, and he recalled it specifically because he recalled the professionalism of the marshals in dealing with that. And that's consistent with other conduct by the defendant in this case. The district court remarked that the defendant sought to withdraw his guilty plea on a sentencing issue only after he heard that the sentencing wasn't favorable, or wasn't going in the direction that he thought it would go, and specifically that the government dismissed an attempted bank robbery count against the defendant, but held that he possessed a gun unlawfully in furtherance of an attempted bank robbery. The defendant claimed to misunderstand how that could be used at sentencing, but again, that only happened later. There's an example, as we noted in our brief, where even during his guilty plea, the defendant decided to change course and say that a gun he used in the attempted bank robbery was a replica gun, and then after some private conversation with his lawyer, he backtracked from that and acknowledged it was a real gun. So again, these are examples of the defendant trying to manipulate the system in his favor, which is what he did with his threats to the district court here. Unless the court has any additional questions, we ask that you affirm the sentence of the district court. Thank you. Thank you. Mr. May, we'll give you your full three minutes. Thank you, Your Honor. Did you need anything? Thank you, Your Honor. There's a problem with the government's position that any time the district judge finds that there is some motivation to judge shop or create and manipulate the system, that automatically recusal isn't warranted. It doesn't matter how potentially prejudiced the court may be. I'm certainly not up here to cast a doubt on the judge's intentions and desire to do his or her job fairly and impartially, and I don't believe that Judge Feinerman was scheming or anything, even approximating that, to try to stick it to Mr. Walsh. But if the court were to adopt such a rule, you could conceive of a judge who is less scrupulous deciding that for any reason in the record, I'm going to pull out something from the record and say, this person is a manipulator. They're just trying to manipulate the system. And therefore, I don't have to recuse myself as much as I dislike this individual. And then you have that such a ruling would attack our faith in the impartiality of our justice system. Now, the balancing test that has been used by other courts, and this court has alluded to, takes that as one factor, but should be balanced out by other factors. And in this case, I think we have, it's fair to look at the totality of the circumstances, to look at what happened, to parse the judge's reasoning and rationale, and find that the court should have recused itself, that these threats were so personal and so egregious that it was just impossible for the judge to be looking at this with a clear mind. And I don't think that we need to be as worried as the government has represented about overuse of these tactics. Insofar as you can call it a tactic, I don't think that this is something that we've got to worry about defendants just hearing what their sentence is and going off and threatening judges right and left. It doesn't appear to me that if you were to change the judge in this case after Mr. Walsh's outburst, that any other person sitting on the bench would say, oh, you know what, I'm going to give Mr. Walsh five years. I mean, that's unrealistic. There's no reason to believe that defendants would get more favorable treatment because they made a threat against a judge's colleague, for example. So in this case, both because it was substantively unreasonable and because the judge should have recused himself, we ask this court to reverse and remand for resentencing before a different judge. Thank you, Your Honors. Okay, very well. Thanks to both counsel. The case will be taken under advisement.